# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## CASE NO.


JOVAUGHN NOEL SMITH WADE

     Plaintiff,

v.

AUTOCLUB INSURANCE COMPANY
OF FLORIDA

And

AUTOCLUB INSURANCE HOLDINGS, LLC

     Defendants.               /

## COMPLAINT

Plaintiff, JOVAUGHN NOEL SMITH WADE ("Plaintiff"), by and through his undersigned attorney, sues Defendants, AUTOCLUB INSURANCE COMPANY OF FLORIDA and AUTOCLUB INSURANCE HOLDINGS, LLC both transacting and doing business as "AAA" (both hereinafter "AAA"), and alleges as follows:

## INTRODUCTION

1.    This is an action for damages, declaratory, and injunctive relief by Plaintiff against AAA for gender discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Florida Civil Rights Act of 1992 ("FCRA"), and 42 U.S.C. §1981 ("§1981") as well as for retaliation under Florida's Private Whistleblower Act, Florida Statute §§448.101.104 ("FPWA").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and Title VII. The Court's supplemental jurisdiction is invoked for the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3.    Venue properly lies in this judicial district pursuant to 28 U.S.C. §1391(b), in that the Defendants maintain offices within this judicial district, carries on commerce with citizens of this judicial district at open places of business located within this judicial district and Plaintiff both resides and frequently starts work for AAA within this judicial district.

## PARTIES AND EXHAUSTION OF REMEDIES

4.      Plaintiff is an African-American male, sui juris, and, at all times material to this action, was a resident of Hillsborough County, Florida.

5.      AAA through both of its active registered entities known as "Autoclub Insurance Holdings LLA" and "Autoclub Insurance of Florida" list a principal headquarters of in Florida at 9125 Henderson Road, Fourth Floor, Tampa FL 33634 and a registered agent of CT Corporation System, 1200 South Pine Island Road, Plantation FL 33324.

6.      Plaintiff has complied with all conditions precedent to jurisdiction under Title VII and the FCRA in that he filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") within 300 days of the unfair employment practices alleged in this Complaint; Plaintiff has filed

this suit within 90 days of receiving a Right to Sue notice from the EEOC dated November 15, 2022; and Plaintiff is filing this Complaint within the FCRA's four (4) year statute of limitations for the alleged discriminatory acts. Thus, all, administrative prerequisites have been satisfied and this suit is timely filed.

## GENERAL ALLEGATIONS

7.     Jovaughn Noel Smith Wade (hereinafter the "Plaintiff") was hired on April 30, 2019 as an Insurance Agent by Autoclub Insurance Holdings, LLC and Autoclub Insurance Company of Florida (hereinafter "AAA").  Prior to an incident that allegedly occurred on February 24, 2022, Plaintiff had received no discipline known to Plaintiff and his work with AAA went relatively smoothly without major incident.  During the twelve months prior to the incident, Plaintiff had been placed in a sales tier which gave him access to a number of potential client leads with a high rate of signing on for a package.  As a result of being in a high tier as well as his own dedicated service, had no problems reaching the sales numbers required to be in a "bonus level" which paid $8,000 to $11,000 per month on top of his base salary which was only $16.88 per hour.

8.     On or about February 24, 2022, Plaintiff's direct supervisor Christopher Paulison (hereinafter "Paulison") as well as another supervisor Stephen Fogel (hereinafter "Fogel") who was not over Plaintiff called the Plaintiff to alert him that a complaint had been filed against the Plaintiff personally. Plaintiff was told by Paulison and Fogel that his actions were deemed "egregious" by AAA and he was ordered to log off of AAA's  telecommunications system and was under orders not to take additional calls.  Plaintiff then asked what he was being accused of and Paulison responded "I don't really know what happened, I've

just been directed to tell you that your actions are "egregious" and that you have to log off." Plaintiff further asked "Am I being fired?" to which Paulison responded "I don't know. It has to be investigated and right now we do not know anything." Plaintiff affirmed that he would log off the system and did so.

9.      Plaintiff did not hear or receive any additional information from AAA so on February 28, 2022, Plaintiff called AAA as well as Paulison and Fogel individually, but was unable to reach anyone. When Plaintiff tried to log into AAA's telecommunication system it simply indicated that he was "locked out of the system" as "Your password and username in incorrect."

10.     On March 1, 2022, Plaintiff was called by both Paulison and Fogel again and they told him they would listen to a recording of the alleged incident. Before listening to the recording, Plaintiff was asked if he remembered anything about the incident and he said "No". They listened to the call together and nothing was clearly audible just some muffled conversations in high pitched voices vaguely heard in the background. After the recording was over, both Paulison and Fogel admitted that they could not hear anything of consequence let alone something that was "egregious" but both stated that they would need to forward their investigation to AAA's Human Resources Department (hereinafter "HR"). They asked him what the Plaintiff thought was occurring and Plaintiff stated it may have been his then 8-year-old son arguing with Plaintiff's ex-girlfriend's 11-year-old nephew in

another room of his house.   Fogel then said "Hopefully you understand, but a customer said she called in and heard a woman arguing with a man on the call and it was violent.  Don't worry about it, it's out of our hands, but you should be fine. In a few days you'll get a call."  Plaintiff asked, "What do you mean, they think this is some kind of domestic violence situation?"  Fogel responded, "Come on you know how it is.  If they think a man is arguing with a woman, you know how they take it.  The man gets fired and nothing happens to the woman."  Plaintiff was told it was being sent to HR for further investigation and then they disconnected from the call.

11.     Plaintiff waited two days and then texted both Fogel and Paulison asking for an update and no one responded.  Plaintiff waited another day and then texted Fogel and Paulison again asking for HRs contact information with no answer. On March 4, 2022, Plaintiff googled the HR's general number and was eventually told by someone on the general number that Jaime Meissen (hereinafter "Meissen") in HR was responsible.  Plaintiff called Meissen repeatedly over the next few days and it was always sent to voicemail.  Finally, on March 8th, Plaintiff reached Meissen and asked for an update.  Meissen, who identified herself to Plaintiff as a female, responded "I'll give you an update when I am ready to do it." Plaintiff asked for some details about the investigation, including what were the general accusations.  Meissen responded that, "I can't disclose any information,

because it was an ongoing case.  So I'm not going to tell you anything about it."

Plaintiff asked how he could defend himself if they wouldn't provide any

information about what he was being accused of.  Meissen just reiterated that "She

couldn't say anything about an ongoing case."  Plaintiff brought up that he hadn't

received a paycheck in addition to being unable to log in to the system and she

responded "Yes that is what we do to suspended employees."  Meissen then hung

up.  This was the first time that Plaintiff was made aware he had been suspended

without pay.

12.     On March 11, 2022, Plaintiff filed a complaint with the United States

Equal Employment Opportunity Commission (hereinafter "EEOC") which is

jointly filed with the Florida Commission on Human Relations (hereinafter

"FCHR") alleging gender discrimination as he had been suspended without pay

due solely to an unsupported allegation from an unknown woman against him and

without any evidence supporting it had used the allegation to suspend Plaintiff, a

male employee.  AAA's supervisors confirmed that this type of gender

discrimination was common at AAA under HR's direction and that anytime there

was a dispute between a man and a woman, the male was disciplined.

13.     After being made aware of the EEOC complaint of gender

discrimination, AAA switched Plaintiff to a new supervision team.  On March 17,

2022, Plaintiff received a call from his new supervisor Marquel Robinson

(hereinafter "Robinson") who identified herself to Plaintiff as a woman.   Robinson told Plaintiff, "I have some good news, the investigation is over and you can log back into work."  Plaintiff told Robinson that he was concerned about some things, including that the way the bonus structure works there was no possible way for him to get a bonus as it was based not only on the current month sales but the previous month as well where he received no sales due to being suspended. Robinson told him, "Don't worry, you would get backpay and it wouldn't affect his bonus."

14.    Plaintiff attempted to log into AAA's telecommunication system for work the following Monday, March 21, 2022 and was again locked out of the system.  Plaintiff again attempted to contact Fogel, Robinson and Meissen to no effect.  Two days later, on March 23, 2022, Meissen called Plaintiff and told him to log into their computer system and sign a disciplinary HR document or he would not be allowed to work.  Plaintiff reviewed the document and found multiple errors and inconsistencies and told Robinson he would not sign it.  Robinson responded, "Then that is insubordination and you will be fired.  We can't just let you back into the system and will not pay you anything until the document is signed."  Plaintiff continued to argue that he was not going to just sign a fraudulent document so Robinson responded, "Well why don't you just sign it and then send me a list of corrections, I will make sure they are added to the document and our system after

it's signed."  Although Plaintiff did not trust Robinson who had done nothing

positive for Plaintiff at any time during his employment, he relented as he had been

without pay for two months and was facing possible eviction if he did not receive

the money AAA owed him.  Plaintiff sent his updated corrections via email to

Meissen and Robinson and as of the date of this pleading it does not appear to have

been changed or updated as promised by Robinson.

     15.    Subsequently, Plaintiff did receive a small bonus of $1,000, but it was

primarily for sales he did in February as AAA continued to use his "poor sales"

stemming from the suspension and inability to log in to the system against him.  As

the more than one month's lack of sales continued to be used against him, Plaintiff

was downgraded to a lower tier of their sales system which meant they reduced the

overall number of leads as well the quality of the leads.  This meant that sales team

members he regularly outperformed were suddenly substantially outperforming

him as he was no longer on the same "playing field."  Therefore, the fraudulent

suspension that Plaintiff was placed on based on AAA's gender discrimination

policy of always siding with females when allegations of violence were made was

for more than just the thirty days of suspension without pay, it directly negatively

impacted his ability to make bonuses based on sales numbers as well as to generate

future sales as his access to preferred sales leads was removed due to his reduced

sales figures in the short term.

16.     Plaintiff asked Marquel on April 3, 2022 why he was still in a lower tier of leads despite repeated promises that the days he was on suspension would not be held against him.  Marquel reiterated. "Don't worry.  You will get put into a higher tier."  Due in part to being placed in a lower tier with poor access to desired leads, Plaintiff didn't generate enough sales to get a bonus as the suspension days were still being used against him.

17.     On May 3, 2022, Plaintiff against say they were still factoring in February's lack of sales so he wouldn't be bonus eligible yet again. As a result of those numbers plus the poorer than usual numbers for April due to being placed on a low tier of sales leads, he was notified by the system that he was still locked into the lower tier for the upcoming month and even if sales improved would be locked in through June as well at the lower tier of sales leads.

18.     It is only at some point in June that Plaintiff noticed he only was only being paid $78.00 for two weeks.   Robinson was apparently "removing"/denying hours in the system that he had submitted for approval.  When he questioned Robinson about why she was removing his submitted hours, Robinson admitted that she was removing any hours he worked where he was unable to make calls because of persistent errors and downtime in AAA's telecommunication system as well as bureaucratic hours where he was emailing customers or other staff, creating new applications for customers or otherwise dealing with customers in a way that

were not direct sales calls.  As she deemed him a sales agent only, Robinson was

only approving hours where he could prove in the system that he was actively on

the telephone with a customer.

19.    On June 26, 2022, Plaintiff called HR and told the unidentified HR

agent that he couldn't work with Robinson because she was keeping him in the

worst tier for sales leads which led to no bonuses and that she was "stealing hours"

by removing hours where he wasn't specifically on call.  Plaintiff identified that

his $78.00 paycheck for two days of work was below even federal minimum wage

and threatened to file another complaint about the ongoing issues.  The

unidentified HR representative admitted that Robinson was wrong to edit his hours

and remove them and that he was entitled to that payment.  Despite this admission,

Plaintiff never received the backpay for the hours she stole.

20.    On July 3, Plaintiff logged on and was told he would be working with

a new supervisor, Robert Martinez (hereinafter "Martinez").  Martinez welcomed

Plaintiff to the team on July 3 and Plaintiff expressed that he wanted to get back to

making bonuses as the bonuses substantially eclipsed his base pay and he could not

afford to live on just the base pay which was barely above minimum wage.

Plaintiff had recently been required to use paid time off as well as unpaid Family

Medical Leave as his then 9-year-old son was victim in a criminal case which

required time off to addend court, psychological examinations of his son, mental

health therapy with his son, and meetings with attorneys and investigators on behalf of his son.  Martinez assured Plaintiff that he would be placed on a higher tier of sales leads and that both the PTO and FMLA leave would not be held against him when it came to bonuses.

21.    An HR benefits manager Kara Ridenour (hereinafter "Ridenour") was now in charge of his issues with his child starting in July 2022 and she was supposed to alter his quotas due to the use of FMLA so that he could become bonus eligible again.  This was not done and he remained outside of bonus eligibility again for July and August.  Plaintiff was reassured again by Ridenour and Martinez in the end of August 2022 that his leave and altered quotas would even be backdated so that he would have been bonus eligible for the months July and August.

22.    On September 1, 2022, Plaintiff logs in to AAA's telecommunications system and it shows he is still bonus ineligible for September and he has not been paid a bonus for July or August.  Plaintiff has been repeatedly promised by Ridenour and his supervisor Martinez that they would backdate and alter his work for bonus eligibility.  Somehow, Plaintiff is leading the company in sales yet is still not bonus eligible because of how they are calculating his sales.

23.    On September 15, 2022, Martinez came back and said that HR had deemed him ineligible for a bonus because he was using FMLA hours and he could

not receive a bonus if he did not have PTO hours available.  Plaintiff and the new

manager had a heated discussion wherein the new manager said "He was done with

it" implying he would do nothing more to try to fix Plaintiff's ongoing bonus issue

and then stopped responding to Plaintiff's texts, phone calls and other messages.

Plaintiff threatened again to further tell the EEOC about the ongoing wage

discrimination issue he continually faced because of his gender.

24.     On September 21, 2022, Plaintiff is called by Martinez and an

unidentified female manager and asked "Why did you leave two customers on

hold?"  Plaintiff did not know what they were talking about.  Martinez then said "I

was reviewing your calls and found two individuals who were on hold, one for a

combined two minutes and fifty nine seconds and the other for roughly four

minutes".   The first hold was made by Plaintiff to respond to an email from HR

that required his immediate response and the second time he was on hold as

maintenance had entered his room to work on the Air conditioning unit.   Martinez

then said that this constitutes a "bad customer experience" and according to

paperwork he signed in association with the previous incident, "A second example

of a bad customer experience would constitute discipline".  In neither of the new

cases did the customer complain about their experience to the employer or

otherwise identify that it was a "bad experience", these were solely issues created

by Martinez.  The other unidentified female manager admitted that there had been

no complaint from the customers, but that they had decided to send it HR for possible discipline.  Plaintiff complained that this was retaliation for his threat to report the ongoing wage and gender discrimination issues.  This complaint was ignored.

25.     Plaintiff responded to the complaint online on September 22, 2022. On September 26, 2022, Plaintiff received notification that Martinez had been terminated.  Only on October 3, 2022, was Plaintiff notified that he was being suspended again due to placing two customers on hold.

26.     On October 26, 2022, Plaintiff received an email from HR stating that he was being terminated retroactively to October 14, 2022 for placing two customers on hold.  Plaintiff had never been warned that placing customers on hold could result in discipline, let alone termination.  The simple fact that the system allows customers to be placed on hold indicates that this use is commonplace in AAA.  Plaintiff is further unaware of any AAA employee receiving discipline and/or termination for placing customers on less than five minute holds.  At the time of his termination, if Plaintiff had been bonus eligible he would have received up to $82,500 in bonus pay.

27.     On November 15, 2022, the EEOC issued Plaintiff the right to sue AAA for gender discrimination.

28.     Plaintiff has satisfied all conditions precedent to bringing this action or these conditions have been waived or otherwise excused.

29.     Plaintiff has retained the undersigned attorney to represent him in this action and is obligated to pay said attorney a reasonable fee for his services.

### COUNT I: VIOLATION OF FCRA (GENDER DISCRIMINATION)

30.     This is an action for discrimination based upon gender under the FCRA.

31.     Plaintiff reasserts the general allegations as set forth above in paragraphs 1-29 and incorporates these allegations herein by this reference.

32.      Defendants violated the FCRA by discriminating against Plaintiff based upon his gender for reasons including but not limited to: suspending him based solely on his gender as there was no evidence Plaintiff had been involved in an episode of domestic violence against a female beyond the unsupported allegation from an unknown customer who identified as female; and refusing to reimburse Plaintiff for backpay and keeping him in a lower tier of sales leads which led to his inability to earn a bonus.

33. As a result of Defendant's violations of the FCRA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, JOVAUGHN NOEL SMITH WADE, prays that this Court will:

a. Order Defendants, AUTOCLUB INSURANCE COMPANY OF FLORIDA and AUTOCLUB INSURANCE HOLDINGS LLC, to remedy the gender discrimination of Plaintiff by:

    i. Paying appropriate back pay;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

    iv. Paying for lost benefits including medical insurance, pension and retirement plan;

    v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

**COUNT II: VIOLATION OF TITLE VII (GENDER DISCRIMINATION)**

34.    This is an action for discrimination based upon race under Title VII.

35.    Plaintiff reasserts the general allegations as set forth above in paragraphs 1-29 and incorporates these allegations herein by this reference.

36.    Defendants violated Title VII by discriminating against Plaintiff based upon his race for reasons including but not limited to: suspending him based solely on his gender as there was no evidence Plaintiff had been involved in an episode of domestic violence against a female beyond the unsupported allegation from an unknown customer who identified as female; and refusing to reimburse Plaintiff for backpay and keeping him in a lower tier of sales leads which led to his inability to earn a bonus.

37.    As a result of Defendant's violations of the Title VII, Plaintiff has been damaged.

WHEREFORE, Plaintiff, JOVAUGHN NOEL SMITH WADE, prays that this Court will:

a. Order Defendants, AUTOCLUB INSURANCE COMPANY OF FLORIDA and AUTOCLUB INSURANCE HOLDINGS LLC, to remedy the

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

### COUNT III: VIOLATION OF §1981 (GENDER)

38.    This is an action for discrimination based upon race/national origin under 42 U.S.C. §1981. Defendants deprived Plaintiff of his rights of equal protection of the law against discrimination on the basis of gender.

39.    Plaintiff reasserts the general allegations as set forth above in paragraphs 1-29 and incorporates these allegations herein by this reference.

40.    Defendants violated §1981 by intentionally and purposefully treating Plaintiff differently in the terms and conditions of his employment because of his race and gender, including but not limited to: suspending him based solely on his gender as there was no evidence Plaintiff had been involved in an episode of

domestic violence against a female beyond the unsupported allegation from an unknown customer who identified as female; and refusing to reimburse Plaintiff for backpay and keeping him in a lower tier of sales leads which led to his inability to earn a bonus.

41.    Defendants' discriminatory actions had the purpose and effect of denying the Plaintiff rights in connection with his employment with AAA that employees outside his gender were allowed to enjoy.

42.    As a result of Defendants' violations of §1981, Plaintiff has been damaged.

WHEREFORE, Plaintiff, JOVAUGHN NOEL SMITH WADE, prays that this Court will:

a. Order Defendants, AUTOCLUB INSURANCE COMPANY OF FLORIDA and AUTOCLUB INSURANCE HOLDINGS LLC, to remedy the gender discrimination of Plaintiff by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and

retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to

Section 760.11(5), Florida Statutes.

## COUNT IV: VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT

43.    Plaintiff reasserts the general allegations as set forth above in

paragraphs 1-29 and incorporates these allegations herein by this reference.

44.    Florida Statute §448.102 (1) prohibits an employer from taking a

retaliatory personnel action against an employee because the employee has

"Disclosed, or threatened to disclose, to any appropriate governmental agency,

under oath, in writing, an activity, policy, or practice of the employer that is in

violation of a law, rule, or regulation."   Plaintiff not only brought the wage and

gender discrimination violations to the attention of AAA in writing, but he filed an

active EEOC complaint against AAA for their actions.

45.     Florida Statute §448.102 (3) prohibits an employer from taking a retaliatory personnel action against an employee because the employee has "Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer."  AAA continued its retaliatory personnel actions in part, but not limited to, continuing to uphold its imposition of suspension without pay and probation despite no finding no evidence to support the customer's baseless allegations.  AAA had been provided ample opportunities to reverse its course and chosen to maintain its punishment of Plaintiff.  Moreover, AAA egregiously hyperinflated two incredibly minor instances of Plaintiff placing a customer on brief holds for nonfrivolous reasons into a rationale to terminate him.

46.     AAA directly violated the FWPA by these actions as continuing to withhold base pay as well as the possibility of bonus pay by placing him on a reduced tier of sales leads and ultimately terminating Plaintiff for the laughably frivolous reason of placing two customers on brief holds where even they had not bothered to complain and there had been no prior warnings or instructions that this was an issue constitutes adverse employment action and "retaliatory personnel action" under section 448.101(5) of the FWPA.

47.     Plaintiff's statutorily protected conduct under the FWPA was casually connected to AAA's decision to continue to uphold the first fraudulent suspension, decision to continue to hold Plaintiff in a lower tier of sales leads which eliminated his ability to make bonuses and ultimately their decision to terminate Plaintiff for the ludicrous offense of placing two customers on brief holds for nonfrivolous reasons in a system that allows this as a commonplace action as they are all close in time to his protected conduct.

48.     As a result of AAA's violation of the FWPA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, JOVAUGHN NOEL SMITH WADE, prays that this Court will:

a. Order Defendants, AUTOCLUB INSURANCE COMPANY OF FLORIDA and AUTOCLUB INSURANCE HOLDINGS LLC, to remedy the violation of the FWPA by AAA by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and

retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to

Section 448.104, Florida Statutes.

## DEMAND FOR JURY TRIAL

Plaintiff, JOVAUGHN NOEL SMITH WADE, hereby demands trial by jury

on all claims triable by right of jury under state or federal law.

Dated this 13th day of February 2023

Respectfully submitted,

*Warren J. Pearson, JD*

Warren James Pearson, JD
3562 Four Oaks Blvd
Tallahassee FL 32311
Independent Co-Counsel with Marble Law
Counsel for Plaintiff
Telephone: (850) 567-6164
E-mail: warpear@gmail.com
Florida Bar No.: 0711578